Good morning, or afternoon. I did it right away. May it please the court, I am Robert Nersessian and I am here for the plaintiff appellant, Lori Tsao. This matter comes before the court after a grant of a summary judgment for the appellees and a denial for the appellant of a cross motion for summary judgment. Your honors, let me go straight to the crux of, or address the primary error in the court below, which is frankly the dismissal. When I say primary, I mean the most glaring, I would suggest. The dismissal is a state law claim of false imprisonment. The court writes in its decision, neither Makeley nor Crumrine heard anything about invitations until Tsao's attorney arrived and explained the invitations. Then, they promptly took the handcuffed Ms. Tsao through Mr. Crumrine to jail. So, they did hear about it and they took her to jail and the court determined that the invitations were essentially irrelevant. The problem here is that the plaintiff appellant, Ms. Tsao, put authority before the court, I believe five deep, that once a person is invited, they cannot be a trespasser. The court refused to accept that authority. Fine, but the problem is the court, without citation to any authority, then created its own authority, which says that a person who has been trespassed and then received an invitation is a trespasser. That's not law. At best, that's a question of fact. And there is no case that ever says that. Well, I'm a little baffled by where you're starting here. First of all, the officer Crumrine actually arrested her for a different reason. I understand. I'm addressing the, Your Honor, I'm addressing the state law false imprisonment claim against Desert Palace. As I understand it, he wasn't taken to prison because of the trespass claim. She would have been cited and let go had it not been for the supposed erroneous statement to the police officer. And then she was taken to jail for essentially both of them. But it wasn't for both of them. Okay. With respect to Caesar's Palace or Desert Palace, which is Caesar's Palace, it's a DBA, the detention, the seizure was, the imprisonment was solely based on trespass. So if there is a question of fact as to whether or not there was a trespass, then there is a question of fact as to whether or not false imprisonment occurred. And this shows up directly under the Nevada statute. So would you be willing to have us affirm on everything else and just reverse on this? Absolutely not, Your Honor. What I'm pointing out is that I'm leading with what I think is certainly Ms. Tsao's strongest argument. Not very strong. Pardon? Not very strong. I mean, the fact that a suspect has an explanation doesn't make an arrest without probable cause. Well, that's the other place in this issue where the court below errs. I mean, you agree with that. I do not, Your Honor, in the context of a false imprisonment claim under state law. Okay? And the reason why is because the seizure that is authorized is only under NRS 171.12, I believe it's 6, it might be 4, that allows for the private citizen, Makley, and Caesar's Desert Palace to take Ms. Tsao into custody. That statute specifically authorizes the seizure for a misdemeanor in the form of a citizen's arrest only for a crime that is actually committed. There is no probable cause test whatsoever. The sole test is whether the crime was actually committed. That was discussed at length in our brief at pages 55 and 56, the opening brief. The statute says for the commission of a misdemeanor in the presence of the opposite. You have to have a jury conviction? No, it would be a question of fact for the jury in this case on false imprisonment as to whether or not Ms. Tsao actually committed trespass. And if she did, then the arrest would be authorized, which is the test for false imprisonment. But the court below never allowed us to get to that point, specifically by determining the issue on the basis of probable cause when the issue on a misdemeanor under Nevada law is an issue that turns on the actual commission of the crime. In what case is your best case supporting that? Pardon me? Which is your best case supporting that? Your Honor, the best support for that is NRS 170. And on what case? I would cite to ñ I mean, NRS does not say an actual conviction, right? No. It doesn't turn on an actual conviction. It turns on whether or not a crime occurred. So what case says that you actually have to have a finding that an actual crime occurred is supposed to be a suspicion? Barletta v. Golden Nugget Casino, Your Honor, 580F sub 614. Quote, however, it was essential that such offense shall actually have been committed or attempted. District of New Jersey, huh? That would be District of New Jersey. But Nevada applies the common law as well, NRS 1403L. Applying that section? Pardon? Applying the Nevada section that you cited? It is functionally identical, Your Honor, and that's not the only ñ So the answer is no? Pardon? It doesn't apply that law. Not Nevada law, but it applies identical language. And we've also cited a number of cases at page 57 of our brief where that is the law as applied under the common law in numerous other jurisdictions, including New York, Arkansas, and Pennsylvania. And what I'm pointing out here, Your Honor, is that ñ or what I would like to add is that Nevada by statute expressly says that that would be the law in Nevada as well under NRS 1.030, which states that the rule of decision in all courts in the state of Nevada will be the common law. And ñ So that would provide a lawsuit against ñ that would provide a successful cause of action, in your view, against CSRS, what it can bad against Crumrine. Okay. The Crumrine matter is a matter dealing with 42 U.S.C. 1983. But I thank Your Honor for pointing that out because also under the arrest statute for police, the identical standard under Nevada law applies to a police officer with respect to an arrest for misdemeanors. And essentially an on-point case under the common law ñ and by the way, NRS, the arrest statutes in Nevada are a codification of common law. And under Muniz v. Melman, which is indistinguishable, that officer Crumrine under the common law and thereby under the common law codification, the Nevada statutes, would correlatively be liable for the state torts of false imprisonment. And the state tort of false imprisonment. And that citation would be 99 Northeast 2nd, 37. That's a Massachusetts case construing the common law. All right. I'm not to take it that you believe that there's no state action and that's why you're not arguing it. No state action? As to ñ not as to the state. You're ñ you're ñ Your Honor, I was ñ Well, your plea is concentrated largely on 1993. You're not arguing that now. Is that because you concluded that there's a real problem on the 1983 issue? No, your Honor. That's because I concluded that I cannot personally reconcile how the court could have dismissed the state law of false imprisonment claim under the law. And that's why I'm leading with that. Okay. And it is a personal thing. But it is also because I believe the law is just that clear. Turning to state action, we have the CELA program. And that was the basis for the detention of Ms. Tsao. That is ñ Well, it wasn't, in fact. Or it wasn't clear ñ or it was for five minutes at best. Yes. So on that theory, first of all, it's not even clear it was for the five minutes. But that would get you five minutes' worth of detention and the rest of it would become irrelevant if that were ñ if that's your only stance. Your Honor, let me suggest that that would not make it irrelevant. It would rather establish that the seizure occurred with state action. From there, under classic tort theories, everything proximately related does relate back and is ñ Well, not if he then decided that it wasn't going to ñ I mean, well, there are two issues about CELA. One is it's not clear to me from the case law that even it would lead to a public function state action, given that the authority was not whatever the case law means by plenary, which I'm not sure I know. But they seem to mean something like you can do anything a police person ñ a police officer could do, not just one thing. And even under CELA, they could do one thing. They could arrest them ñ or a very limited thing. They could arrest them for trespass with many limitations. The CELA issue doesn't turn on the arrest, Your Honor, because they can conduct a citizen's arrest as well. The CELA issue turns on issuing state process, the summons to appear. But clearly that's not what they did. I mean, that was not under CELA. That was the goal and that was the authority under which Makeley was operating and the authority which Makeley held when he seized her. What's the beef? He has authority. He asks for identity. As he can't identify her, he stops. I mean, you know, it seems to me you have to at least be able to figure out whether she meets the requirements for arrest under that statute. Well, Your Honor, let me take you to ñ As soon as he found out, no, I can't identify who she is, he stopped. I don't see where you're going to climb there. Well, taking you to the Crumrine answering brief at page 13, lines 8 through 10, the officer Crumrine himself in the pleadings before this court or the papers before this court is stating that he only showed up to assist Makeley in getting identification to issue the CELA citation. It seems to me that your best state action argument is something like this. There was a plan that went as follows. If they could get the ñ they had CELA authority if they could get the identification. And if they didn't get the identification, the plan was to call the police in and the police would then get the identification and here getting the identification was actually rather a project, resulted in her being detained for quite a while. And so there was joint action on that theory, not public function, which it seems to me is very difficult to sustain. Taken to jail on that theory, but ñ She wasn't taken to jail on that theory, actually. Well, you're right. She was cited. You're right. I apologize, Your Honor. She was held under that theory and Makeley continued to hold her, awaiting the police arrival to assist in the issue of the ñ issuing of the CELA citation, which ñ Not to assist in the issue of the CELA. Your Honor ñ To assist in the issue of a non-CELA citation, of an ordinary citizen's arrest citation. No. I believe the answering brief states that it was to give the information ñ get the ñ I realize that that's what happened. But what is ñ I think the answering brief did say that Crumrine arrived to provide the identification so that Makeley ñ We don't review briefs. We review the record. We review a district court's judgment and the record. So saying they say this in their briefs will help you not at all. Okay. And it wastes valuable time. Judge Berzon asked you about what's in the record. Okay. And answering they say something else in their brief doesn't help you with me at all. All right. And I'm guessing not with her either, so. Let's talk about what's actually in the record. Okay. What is actually in the record is ñ and you can see it ñ is Officer Crumrine showing up and using ñ turning to Judge Berzon's statement about joint action, using his authority to impose on the plaintiff for the benefit of the defendant or for the benefit ñ I mean, he shows up. She's ñ by that time, she's been subject to a citizen's arrest. And, therefore, she is already in custody and custody is handed over to her ñ to him, rather. There's a valid citizen's arrest as far as he can tell. So now he asks some questions. So I don't see what your problems with that. Certainly one of the things that you have to find out when you're asking somebody, when you book somebody, is who they are. At that point, he wasn't booking anyone. He was asking the questions for the benefit of Caesars. And I would also point out, when we're talking about joint action, referring to the video, you can see ñ Well, state action usually runs the other way. It's not when somebody's doing something for the benefit of Caesars, but when Caesars are doing something for the benefit of the state. If the state and Caesars are acting together towards the goal of either and acting in concert under 1983, that would fulfill the test for the state action. I would point out, if you watch the video, Officer Crumrine goes out of his way, which is part of the record. Officer Crumrine goes out of his way to turn Ms. Tsao over, after he's done with her, for Caesars to take her photo and for various other solely Caesars or solely Desert Palace benefits that are occurring on what is now Officer Crumrine's detention. And I would direct the court to the case of Grosch. You make it sound so bad, but I don't see what's the matter with that. So he arrests her. Your Honor. And then he allows the victim of the crime to photograph her. Where's the constitutional knowledge of that? Well, one, it's state action. And two, if there is no crime, which is not known at that point, he's not a judge or a jury. He has no business stepping in and creating the punishment or what happens as a result of a crime merely by being there at that time. This is the state, through Crumrine, assisting a private individual in the detention of that individual and in the provision of private facts of that individual to a third-party citizen in society. That's not why we have police here. We have police to ---- Well, that's a matter for you and the people of Nevada to work out as to what police are used for. The question is, where's the constitutional violation? Because they're working together. And, again, I would cite the Grosch. Where that was just merely a police officer coming in and turning over the gambler's driver's license to the casino. And that was state action. Assuming there was joint action, state action, there still has to be a constitutional violation that the joint action did. And what's the connection to Desert Palace, not to Makely, but to Desert Palace, because that's the defendant, of what you're saying is you're saying it's an arrest without probable cause. It's an arrest without probable cause because, as I understand your best argument, it's because Desert Palace knew and Crumrine, to some degree, eventually found out, while the issue was still there, that the marketing department was still sending her invitations after the trespass. And your theory is that the consent was revoked, so she wasn't really trespassing. And so the question is, explain to me how ---- Well, first of all, do you think a Minnell-like theory applies here to Desert Action's actions? Desert Palace's actions. Okay. Minnell, with respect to Desert Palace, would, one, not apply with respect to the state torts. But setting that aside, Minnell also would not ---- We don't know at this point because we haven't had a trial. And if you look at what the summary judgment was granted on, it appears ---- I mean, legally does it apply? Does it legally apply? Your Honor, the authorities are ambiguous, and I would suggest that it would be inappropriate to apply Minnell to private actors. But there is authority that says that the Minnell analysis would apply to a private actor, a private corporation for the acts of its employees, except that Minnell only goes so far as those actions that would be outside the scope of policies and procedures. All right. So why is the policy a procedure? That's what I'm trying to get to. Yes. So in this case, the policies and procedures are exemplified, again, on the video, with the head of security for Caesars undertaking the very actions you see on the video. And he is a policymaking individual. Moreover ---- He's the head of ---- Maxley was the head of security? That was my understanding. I believe that's in the record. I can't give you a ---- I thought there was someone else he spoke to. Well, there are other managers. He is certainly the chief security officer on site at that time. And if you watch the video, he is clearly following what would be policies and procedures. But more importantly, there was nothing in here to say that this isn't policy and procedure. But Maxley didn't know about the invitations. I mean, you have to go one stage up to attribute. It seems to me you have to have a direct action theory that says the corporation knew both pieces. Because Maxley didn't know. For most of the time, he was ---- she was detained, at least. And Your Honor has pointed out one of the problems with a Monell theory being applied to private companies, which is the collective knowledge of the entity makes this ---- Well, that's the same thing. It's the same thing. I mean, a municipality is a municipal corporation. That's the same problem. Except that ---- and, okay, I see what you're getting at, Your Honor. I don't know which side are you on. Are you saying there is a Monell violation here or there isn't? As I hear the phrase Monell violation, I'm having a problem putting it in context. Does Monell apply to what occurred here, such as to excuse Maxley's actions? I'm saying no. Well, suppose it doesn't. If Monell doesn't apply, then how do you reach ---- how do you deal with the fact that Maxley, at least for most of the time she was detained, couldn't have known the invitation theory and therefore had probable cause to think she was trespassing? Which takes us to the pleadings and why this is an action against Desert Palace. Right. This is the action of Desert Palace and the action of Desert Palace. What this essentially says is because of what's going on here, Desert Palace, for their own actions, should have a good-faith defense. And, Your Honor, I would suggest that Howerton v. Gabika out of this circuit says that that is not the application and they don't have such a defense. Okay. But nor for ---- I mean, the reason ---- I mean, obviously, we weren't sitting here doing nothing about this case. Unfortunately, Judge Pollack died in the meanwhile. But we were doing something. And some of the things I was concerned about were how does ---- if you're talking about Desert Palace's actions, you have to be talking about Desert Palace acting through agents. Right? The agent being Maxley. One agent being Maxley and the other agent being the marketing department. Your Honor, I would ---- Is that basically what you're saying? I am not agreeing with that position because what I am saying is that in a private corporation, you get to the point where there are things that are acts of the corporation, not acts of the employees. I know that ---- Okay. But it's only an act of the corporation because Maxley, who's doing whatever he's doing, is doing it as an agent of the corporation and because the marketing department, who sent out the revocations, was also acting on behalf of the corporation. Right? And what other sense is it the action of the corporation? I can't argue against the sequential logic. All right. So in what other sense is it the action of the corporation? It's the actions of the corporation because they set this up from employees that we don't even know and never could determine. Set up what? That this trap, this was something that had to happen under the way Desert Palace operates. No, it didn't have to happen. Your client could have just stayed away. Could have avoided it perfectly fine. I'm not saying ---- There was nothing that forced her to go in. I mean, she disguised herself. She gave the wrong name when she was asked. I mean, she obviously was a notice that they did not want her there. Your Honor, I would suggest that there is nothing in this record that indicates a disguise, and indeed she was recognized on site. Also, she is an advantaged gambler. It is a legitimate trade or business, if you will, or even sport, and she's being excluded from it because she can take her skill level to a level beyond the casinos. That's not ---- I would cite the NRS 463.0129, which is discussed in the briefs as well. The whole reason for the statute with public access is that these parties and these persons are entitled to ---- I know what it's ---- Oh, I am climbing way past time. We can debate this for a long time as to whether she was or wasn't or should or shouldn't have been. The point is she was warned not to come back, and she could have stayed away. So saying that Caesar of Desert Palace forced her, somehow forced her to come back or trapped her is just a little much. My apologies, Your Honor. It's a little way over the top. No, my apologies. I think you misunderstood what I was saying. I don't think I misunderstood. I was not saying that Laurie Tsao was going to eventually be arrested. I was saying that by the policies and practices that were put in place, an unconstitutional or at least a false imprisonment arrest was going to occur. It didn't have to be Laurie Tsao. Only if she decided to ignore the warning she'd been given not to come back. Or to accept the invitation she was given to return. Pardon? I said, or to accept the invitation she was given to return. That would have been a fair choice, but exactly. Nevertheless, what I'm saying is ---- So did you say, never mind about the warning, you know, realize we warned you, withdraw the warning, come back, we changed our minds and say that? That's pretty much what it would have, that's the only implication you can take away from that, Your Honor. No, it did not say that. It said, Laurie Tsao, please come in and play at our casino. Okay? That's what it said. Is this a question of fact or a question of law? Well, that was where I started, Your Honor, and thank you, because this is purely a question of fact on the state law issue. I believe it's a question of law under the authority we cited, which only could work one way and not the way the district court did it. But for Judge Kaczynski, what I'm saying, or what I'm trying to point out, is that let's take an innocent person who is trespassed. And that happens all the time by mistaken identity or whatever. Pardon me? Not your client, somebody else. And I'm saying, when I say this was going to happen, that's my point, is it's not Laurie Tsao that is necessarily going to be false imprisonment. Under the policies and practices we see here, there are going to be false imprisonments, because people are trespassed all the time, given trespass warnings, and it includes lay people, people under mistaken identity. I don't understand what policy of Desert Palace, without this invitation marketing problem, is independently responsible for this. Well, it's not without the marketing problem. The marketing problem is part of the policy. They are sending out mass invitations to anybody who historically gambled. Okay. But they are by specific name. I don't want anybody to have the impression here that the record shows these invitations are to Laurie Tsao. Okay. That, even by Judge Jones' analysis, that would be going on throughout the country with all kinds of people. What's the policy? In three sentences, what's the unconstitutional policy? The policy that results in a constitutional violation is the lack of coordination between marketing and security that will result in arrest. And, Your Honor, I, well, no, that's off the record. I wouldn't want to go there. Go ahead. Why would it result in arrest unless somebody who has already been trespassed comes back? Well, that's my point, is everybody under their policy who is trespassed, including people that get a nominal trespass, get out and never come back, people who are innocently or mistakenly trespassed, everybody who gets a trespass warning, if they are in the system, by the policies and procedures, are going to be invited back. So there is no way that CSERS could have not coordinated the two and expected that they weren't going to be committing false imprisonments and illegal seizures under the SELA program and everything else that has occurred in this case. But most of this sounds factual, that how these two operations work, whether everybody received it or didn't receive it. And that was one of my other points, Judge Reinhart, is that the court jumped to this end without any, this wasn't argued in the court below. It wasn't part of what we were dealing with. It was argued that Makley couldn't have known. I'm sorry. What wasn't argued? There was nobody saying that anything that occurred here was outside of policy. In fact, it all seemed to be within policy. And if it's within policy and it did occur, which, like I'm saying, that seemed to be admitted by default in the court below, then it is the tort of CSERS. So Monell, I don't think Monell was expressly discussed in the decision, but if it was, the way it applies didn't take into account and wasn't briefed by the parties and isn't what was going on. It was just — If there's anything in this record to show that this was a policy, the policy that you just described before, i.e. I mean, we know that Lori Sow got a mass mailing. And we know that Lori Sow had been trespassed and that whoever trespassed her didn't know anything, apparently didn't know anything about the mass mailing, I suppose. I mean, I guess we could infer that. That's the case stated as much in his deposition. Officer Makley said, I didn't know that. All right. But the question is, is there anything about a pattern or a practice or policy in the record? I.e., do we know that, in fact, did you ever do any discovery and should you be allowed to or could you have to say that there, in fact, is no coordination? Your Honor, I can't point to the record, but part of what Desert Palace argued was that Makley would have had no way of knowing and, therefore, CSERS can't be liable. And the reason, as argued by them in the court below, that Makley couldn't have had knowledge is because of this very lack of coordination. So, yes, that's in the record. And the other thing in the record is what actually occurred in this case. And with respect to what actually occurred in this case, I would again highlight the court below said mass mailing. I've heard it here. The invitations attached are to Lori Sow. That is a single mailing that may have been put in a mass organization. But this is not a mass mailing. If it only happened to Lori Sow, then you don't have any policy. Pardon? If it was only Lori Sow who got this invitation and we don't have any record of anybody else getting such invitations, then there was no policy. Then they trapped her intentionally, Your Honor. They set her up, and if that was the case, then they specifically invited her and her only back in with the knowledge that their security department would take her into custody. I mean, pardon? You're way over time. Thank you. I understand. Thank you. And do you want anything on the attorney's fee motion? No. No? Thank you. Thank you. Good afternoon, Your Honors. My name is Peter Angula. I represent Desert Palace in this appeal. I am splitting my time with counsel for Officer Crumrine, so I'll be as brief as possible. The first aspect of the analysis of Judge Jones's order was whether there was, in fact, a 1983 violation that could be assessed. Do you want to respond quickly to the false imprisonment issue? It should be a short answer. I mean, is it true that State law requires that there actually be a crime as opposed to probable cause for a crime? Misdemeanors. Misdemeanors. For the tort of false arrest or false imprisonment, no, Your Honor. The elements of that tort are an arrest without legal cause or justification, which the Nevada Supreme Court has indicated is a probable cause. And so Judge Jones's analysis of that was correct. Is there a case law that you're saying that? I believe it's the Marshall case, Your Honor, which is cited in the briefs, M-A-R-S-C-H-A-L-L. Okay. Go ahead. And so if I might, in addressing that issue, from the established facts, there's little question that Mr. Makeley had probable cause to believe that, in fact, a trespassing was occurred. He had trespassed this woman under the name of Ms. Dang some six months earlier. He recognized her when she came in, despite her attempts to try and disguise herself. What do you mean, to physically disguise herself? She wore a her – in her deposition, what she indicated, Your Honor, was that she wore a hat, which she pulled down low specifically to avoid being identified on camera or by people in the casino. She did not wear a fake nose or anything to that extent, but she dressed so that she would not be readily recognized. She played under a different person's name, so she would not be recognized. Was that one of her two names or a totally different name? It was a totally different name, Your Honor. From the records, she indicated she had found somebody's player's card and had simply picked it up so that she could – But that's not illegal and that's not what she was arrested for. No, Your Honor. No, no. She was arrested for trespass. Okay. And in fact, she had trespassed under both elements of the – of the ordinance. The issue of trespass is, one, if you've been warned, you can't come back on the premises again. It's also an element of trespass – Unless you're invited back. If, in fact, there had been a revocation of the prior trespass. No, not a revocation. Suppose it's just an invitation. Suppose someone calls her and says, I'm from Desert Palace. We'd like you to come back. We're not back. Just come. I am not aware of any case law, Your Honors, that suggests that that would be a revocation of a prior – of a general invitation to the public. No, an invitation with her name on it specifically. Well, the invitation actually was under one of her names, and that's correct. Should we certify this to the Nevada Supreme Court? I'm sorry? This seems to be a matter of some interest in Nevada. Should we certify it to the Nevada Supreme Court? It is a thought. As I read this, I apologize. I recently came to this appeal to argue today the prior counsel hadn't been here. But it was a question in my mind as to why, if everyone's so sure how Nevada is going to interpret its statutes, why it wasn't certified. But no request was ever made. Which statute are we talking about? The trespass statute with regard to the impact of the invitation? Is that what we're talking about? Are we talking about – what are we talking about? Yes, Your Honor. I think as to whether the – That was my question, just whether the question of if you have a specific warning – what do they call them, a trespass warning? A trespass warning, yeah. Yeah. And then there is a general invitation to come back, whether that initiates the trespass warning for purposes of misdemeanor trespass violation under Nevada law. It seems to me that's something that Nevada would have some interest in resolving. I think that would be correct, Your Honor. However, at least in the posture of the case at the present time, there is no case law that suggests that such a general invitation  Or no case law that doesn't. That's correct. No case law either way. That's correct. But additionally, if I might, the trespass statute makes it a misdemeanor to enter the property, to vex or annoy the owner or occupant of that property. And again, from the established facts of this case – Does gambling mean to vex or annoy them? Isn't that their business? Well, Your Honor, from the – respectfully, a lay gambler – I don't gamble, but if I were to go in, I'm the kind of person they want to walk in there. However – But if you receive an invitation – you know, we just agreed there's no law on this. Correct, Your Honor. But if you receive an invitation and you accept the invitation, how can you say that's vexing and annoying them? Respectfully, Your Honor, the invitations which are received, which are part of the record – But anyway, she wasn't arrested for vexing and annoying them. She was arrested for coming back when she'd been trespassed. Well, for trespassing is what she was arrested for. For coming back when she'd been warned. That's what the claim was. She wasn't arrested for vexing them. So I think we should just forget that. Let's go forward. All right. Thank you, Your Honor. At any rate, under the State law claim, then, for false arrest, false imprisonment, the standard is legal cause or justification. From the standpoint of Mr. Makeley, he certainly had legal cause or justification to believe that a trespass had, in fact, occurred because he had specifically told her – But he wasn't the defendant. Not to come back. Correct. But in the State law – under State law theories, Your Honor, responding as superior would apply, and therefore, his actions would, in fact, be against the company, his employees. Well, but the defendant, the actual defendant, could be independently liable if it had the knowledge and had authorized the imprisonment, for example. In other words, you can have – and also, he was their agent. Not in a responding as superior sense that anything he does, but he was specifically authorized to arrest her, arrest people under these circumstances, right? It wasn't like somebody getting in a car accident. He was authorized to arrest people under these circumstances, was he not? He was empowered, yes, to make a citizen's arrest of someone who had come in, who had been trespassed off – Is that responding as superior if he actually does what he was authorized to do, specifically authorized to do? It would be from a State law claim. Why? Because he's an employer, an agent of the company. He's an agent. So any time an agent does something, it's responding as superior? Either responding as superior is if you have an employee who does something in their course of the employment, which they're not necessarily authorized to do, like they have a car accident, right? Is that responding as superior? Not when you tell somebody, go do something, and they do it. Well, Your Honor, and I'll certainly defer to your understanding of the law more than mine, but my understanding of the law of responding as superior to the doctrine of responding as superior is the vehicle by which an individual who's acting on behalf of – an agent who acts on behalf of a principal, in this case the employer. So if I hire somebody as a real estate agent and they do something, but they buy a house on my behalf, I'm not responsible for what they do? That's responding as superior as opposed to they're my agent, and anything they do is if they sign a contract, that's my contract. No, Your Honor. And perhaps I'm misunderstanding the Court's question, so I apologize. Under the doctrine of responding as superior, that's what makes you responsible. In fact, that doctrine says that if the person's your agent acting on your behalf and doing so with your authority in an area that you've authorized them to act, that you pick up responsibility for the actions they engage in the course and scope of their employment or their authorization. You, as their principal, bear responsibility for those actions. You don't bear the actions for those that are – that go off the reservation, that are not authorized. How does this help in this case? Well, I think counsel is just answering Judge Berzon's questions. Let me ask you this. I'm trying to understand the facts just a little better, and I'm not – she was trespassed, so she was given the warning. When? Approximately six months prior by this particular man, Mr. Makeley, under the name of Ms. Deng, the last name was Deng, D-E-N-G. So he gives a warning to this person whom he identifies as Deng, which was, in fact, her name. No, it wasn't her name. It was her friend's name that she was operating under at the time. I'm sorry. But she was trespassed at other times under Sal as well. Correct. Twice, I think, under Sal. Once under variant – her original spelling of Sal, which is the – in opinion would be C-A-L. And then once under the name of Sal Hong. But her – this man recognizes her as the person who identifies herself as Deng. That's correct. And that's – do we know anything about how he came to think she was Deng? He had been the one who had trespassed her before and told her at that time to not come back on this.  I understand that part. So he sees somebody doing something that he thinks she shouldn't be doing, and he says don't come back. But you still have to put a name to her face. You have to – how does he know her name? What makes him think – or what do we know about how he identifies herself as Deng? Does he get ID? What happened? Do we know? As I understand from the record, Your Honor, on the September 23, 2007, trespass warning, under the last name of Deng, she was using a player's card under that name. And that's how they identified her and told her not to come back on the premises. What's a player's card? It's a card, as I understand it, that a casino offers to people to come and play. As you play, you get – you build up points. You can receive comped meals or rooms, hotels, based on how many points you obtain with your gamblings. And that doesn't have a picture or anything. So if you have a friend's player's card, if you find one in the street or anything like that, so she comes in, hands her card in, so that's how you know who this person is, and she gets the benefits of the card. And then when he gives her the warning, he uses the name on the card as – and then what happens is she comes back, and he recognizes her, and he thinks, oh, this is the Deng, the person that identified as Deng. Now, when he arrested her, when he first stopped her, he intended to do, what is it? I gather the SIVA thing or whatever it is. SILA. SILA. And then she says she doesn't have ID, and he says something like, well, if you don't have – if you had the ID, I could just let you go on your way, but since you don't have your ID, she says he said you could have brought it to jail. He says, I said, you know, you'll have to go to jail, something like that. And she says something like, well, I'll get my ID. I can get my ID. And he says, no, it doesn't work that way. You can't do that. Right? So he doesn't let her get the ID. Had he let her get the ID by calling somebody, he could have just given her the SIVA thing, but he at that point switched gears and went to this other thing, which is a citizen's arrest, but which requires that as a matter of policy, as much as policy as I understand it, that he call the police and that the police come and that the police figure out – get her identity. It's a matter of state law. It's not a matter of policy. But it's also a matter of their – my understanding is that he said, and there's no disagreement then, that essentially this is the way Caesar's Palace has decided to operate this, i.e., either he does a SIVA arrest or he calls the police to come help him establish her identity. That's great. He's going to perform a citizen's arrest on her. Okay. Under NRS 170.178, the law says a person – a private person making a citizen's arrest is required to contact the police as quickly as possible and have them come and issue – decide to either arrest them or issue a citation in lieu of arrest. But in this particular circumstance, it's only because she doesn't have the ID and so the function of the police is to establish the ID. I certainly think that had she had ID on her, as I read the record in this case, his intent would have – he would have followed this SILA program. Okay. So the police come and actually engage in a rather extensive set of things to establish her ID. They search her purse. They go out and find the car. They – and so on. So they certainly were very involved in getting the citizen's arrest put together, right? Well, I think – yeah. And I don't – And it was over some period of time, like 90 minutes or something. Yeah, I don't – yeah, I think that's correct. I think that's what the record indicates. And they also helped get her photographed and they went and – and the police – I mean, the officer went and looked to apparently satisfy himself that it was, in fact, the same person. And so why wasn't this a joint action? Well, respectfully, Your Honor, the – the SILA thing, SILA, however it's pronounced, was never done. And so that would be the – Yes, but it was – I mean, I would look at the whole thing as a piece. That it's a policy that says either you do the SILA thing or you involve the police in establishing the person's identity. And I suppose the question that would be asked, and fortunately it wasn't asked and it wasn't briefed before this Court, is whether or not a police agency has the authority to extend additional powers for citation, which are statutory. And that's really what happens here. This is – as I understand, this is the policy the police department created so that they didn't have to come out for these citizens' arrests. They could allow them to simply issue citations, which is what the police would do when they arrived. Well, they did, and they did it for their own benefit, so. Right, but I don't know that they have the state authority to – Well, that doesn't really matter. I mean, at this point, as to whether there was state action, that's what they've done. Well, but it does for state action analysis because it has to be – they have to have the authority. Well, we can certify something else to the Nevada Supreme Court. Perhaps, Your Honor. But then one last thing. Certainly. So in terms of this joint action, then you have the actual citation. And it says, I certify or declare that I have reasonable grounds, probable cause to believe and do believe that the above-named person committed the above offense contrary to law. And it says, Officer complaining, printed name. And it says, J. Corrine C. Mackley. It says both of them. Correct. Right? Then it's signed by both of them. That's correct. So what – I mean, isn't – couldn't a jury find that they jointly issued the citation? Respectfully and briefly, Your Honor, I don't want to cut off time for my counsel, but no. Why is that? Because there are two separate arrests here. One is for trespass. I know there were two separate arrests. I'm talking about the trespass arrest. Correct. But this citation is a combined arrest. It's an arrest for trespass. No, it's not. It's an arrest for obstruction. No, it's not. The one I'm looking at is only for that. I don't see another one. The one I'm looking at is only for the trespass on land. Well, Your Honor, then, again, the – and I apologize if I've misrecalled how that citation looks. But the fact would still be that under Nevada law, because this is a citizen's arrest, the process that's followed – How do we know it's a citizen's arrest even? It says traffic misdemeanor or citation complaint. Well, you know it's a citizen's arrest because the citizens also signed it. The private citizens had also signed the citation. But that's the way the statute in Nevada dictates is done if, in fact, an officer is going to issue a misdemeanor citation in lieu of arrest. And it's a citizen's arrest he's called to handle. He has a choice – he or she has a choice to arrest or to issue a citation. In the case of the citation, the complaining witness also signs, which happened in that case. And that's why, Your Honor, it's not a matter of joint action. It's simply a matter of following the state procedure as to what's required to issue a citation in the case of a citizen's arrest for a misdemeanor. And unless there's other specific questions, which I'd be happy to answer for the Court, I see I only have three minutes left, I turn the time over to the remaining counsel. Okay. Thank you, Your Honor. Good afternoon. May it please the Court. Craig Anderson on behalf of Officer Travis Crumrine. The primary issue with respect to Officer Travis Crumrine is whether he violated Ms. South's Fourth Amendment rights by arresting her for obstruction. What happened here was when Officer Crumrine arrived on scene, there was clearly a right for him to identify under the high rule case. There's reasonable suspicion that she has committed a trespass. Yes, so he has the right to contact her and ask her her identity. He asked her for her name. Much more than that. What? Much more than that. Yes. He asked her much more than that. Well, he did, but all with the sole purpose to identify her. He was trying to find out the name for her. Under the Nevada Provised Statute 197.190, if you are misleading or exaggerate for a purpose that hinders, delays, or obstructs a police officer, you can be arrested. And that's exactly what Lori Sow did. When he asked her her name, he says her name is Lori Chang, and he gives her a correct Social Security number. Well, she knows the two are not going to match. She knows that there is no Lori Chang with that Social Security number or vice versa. And she knows what she's doing. And I think it's appropriate at this point to refer. It's with the name on her passport. Okay, now that's a little bit of a red herring in my opinion. Let me explain why. Everything that she has is in the name of Lori Sow. Now, she does say, I have a passport. But she also testified, I have numerous passports. I get fraudulent passports from my friends so I can use different identity. But her actual, her own passport that she would leave, and she was married to this man. She'd been married to him for seven years prior to this. And I happen to know lots of people who use their married name sometimes and their unmarried name other times. But then the question is, what else does she use this married name for? It's not on her driver's license. It's not on her bank statements. It's not on her credit cards. It's not on her work card. How could she have been trying to mislead anybody? She gave him her Social Security number. She gave him her address, all accurately. Well, okay, see that's where we get into the misleading. Because she says, my name is Lori Chang with this Social Security number. I think you are getting drawn far too deep. Isn't it enough that he finds that two don't match? The Social Security number and the name doesn't match. And questions about passports and married names and things of that sort can be sorted out later before a judge. What he knows is if she gives him a name and a Social Security number, he checks and they don't match. Why isn't that the end of the case for you? It should be the end of the case, and you're absolutely correct. Because the issue is Everything else, it's not his business. The police officers are not judges. And if the other two justices agree with you, I will sit down. Can he do that? Can he do what? Did he, in fact, check the Social Security number? He went out and what he did in his deposition is he ran the name with the Social Security number so it did not return a hit because the two would have to be together. So that's when he came back in and said, are you lying to me? Why don't you give a simple answer? The answer is that he had probable cause to arrest her for obstruction. The question is, did he check the name against the Social Security number? Yes. That's a simple answer. Let me just play back what you just answered. It's so confusing. He tried to match the two. He used the machine to do it. The answer came back no match, right? Correct. Okay. That's all you need to say. Okay. And based upon that, there was probable cause, and she admits to waiting. Did he ask her why? He came in and said, well, no, he didn't. And he came in and said, are you lying to me? And she said, maybe. No, I thought that was with respect to something else. Did you drive here today? Correct. Because once it wasn't a match, then he tried to find her identity by ascertaining whether she had a driver's license. Did he ask her? He asked her if she had a driver's license, and her answer was, I have a U.S. passport. Again, misleading. And then he said she had a driver's license. Then she said he had a driver's license. When he said, you understand it's illegal to drive without a driver's license. That she had a driver's license. Yes. And then he said, are you lying? Did he ask her what name the driver's license was in? I don't think he ever specifically asked that. Did he? When he was told by her, when the explanation was given to him by her lawyer as to the two names, did he go back and ask her whether this was so? No, but the argument at that point would be she had already obstructed and misled, so the crime had been committed. By the time the attorney got there, this had already happened. Well, only if she was in fact lying. If she had an explanation, which wouldn't have amounted to lying and would have amounted to him not arresting her, then why was he already committing the crime? You know, she never gave that explanation. She, this is, I would refer to the Supreme Court. Are you admitting that an officer has to accept an explanation given by a suspect? Absolutely not. Does that diminish probable cause? If he suspects of obstructing and he has evidence by checking the computer that she has obstructed, does he have to accept, I mean, if a police officer accepts an explanation of every suspect, nobody would ever get arrested. No, and that was absolutely my point. None of us would ever get speeding tickets, right? Yeah, the obstruction had occurred, yeah. The obstruction had occurred before the attorney even got there, so the crime had been committed. Correct. And he does not have a duty to review every affirmative defense. And, you know, that would in fact be making him being the judge and the jury. If he's saying, well, this affirmative, the invitation doesn't work, but the last name works, I mean, that's not his job. His job is to determine whether she obstructed and she didn't. And she essentially admits that on the videotape. She admits it. When he says, are you lying to me? She says, maybe. That was on a different issue. It's a different issue. It didn't have anything to do with her name. But it shows that she is misleading to hinder or delay the investigation. She knows which name he wants. How does the fact that she said that she drove there when she didn't have anything to do with that? Well, she did drive there. Because that would let him know that she had a driver's license and that then he could find her correct name by running her license plate. So she said she didn't have a driver's license? Nope, she said she had a U.S. passport, and then she said she had a driver's license. Okay. When he asked her a follow-up question. He asked for a driver's license, if she had a driver's license. So instead of saying, yes, I do, which would have been the correct answer to the question, she gave a different answer. She misled him. Implicitly saying, no, but I have something else. She did what a lot of lawyers do. They don't directly answer the question. They go off into a long story. Probably what you're accusing me of, correct? No, no, no. I hear good Kaczynski say this in every argument to a lawyer. You're not the only one. No, it's absolutely correct. And not even the worst in that way. No. And this whole interaction is on videotape. My mind keeps going to the Scott v. Harris case, which is a Supreme Court case with a police car chase, where the court said you can look at a video, and even if it contradicts a non-moving-party story, you can use the video. And on the video here, it's clear that she is attempting to hide the name Lori Sal. That's her goal, and she testified to that. She does not want anyone to know this name. So she's admitted that she was obstructing and misleading by not giving him a verifiable name. And so I agree with Justice Kaczynski that there's clearly probable cause here for the arrest for obstruction. You'd be sure to tell the President, Justice Kaczynski. Yes. Just send him a letter, you know. I'm sure he'll want to hear that. Okay. Anything else? Any further questions? Okay, thank you. Thank you. All right. Case just argued. We'll stand for a minute. We're now adjourned.
judges: Kozinski, Reinhardt, Berzon